UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDUARDO BAEZ | : | |
| | : | DOCKET NO. 3:97CR48(AHN) |
| V. | : | DOCKET NO. 3:02CV68(AHN) |
| | : | |
| UNITED STATES OF AMERICA | : | |

RECOMMENDED RULING ON PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2255


I.   PROCEDURAL POSTURE

Petitioner Eduardo Baez [hereinafter "Baez"], pro se,[1] seeks
a writ of habeas corpus pursuant to 28 U.S.C. § 2255, vacating,
setting aside, and/or correcting his sentence.  On April 5, 1999,
Baez pleaded guilty to Racketeer Influenced and Corrupt
Organizations ["RICO"] Conspiracy, in violation of 18 U.S.C.
§ 1962(d).  He was sentenced on May 14, 1999, to a term of
imprisonment of 228 months, three years' supervised release, a
$20,000 fine, and a special assessment fee of $100.  Baez
appealed his conviction, which was affirmed by the U.S. Court of
Appeals for the Second Circuit in a summary order dated January
4, 2001.  United States v. Baez, Nos. 98-1428(L), 99-1309, 2001
WL 11051 (2d Cir. Jan. 4, 2001).  Baez now seeks collateral
relief pursuant to 28 U.S.C. § 2255.

_____

[1] Baez was represented by Attorney Kurt Zimmerman at both his
trial and on appeal.  He proceeds pro se on this petition to
argue primarily that his counsel provided him ineffective
assistance.

For the reason set forth below, all of Baez' § 2255 claims are **DENIED**.  Specific motions and docket numbers are enumerated in the conclusion.

II.   BACKGROUND

On September 1, 1998, Eduardo Baez, who holds a PhD in psychology, was charged in a Third Superseding Indictment with three counts relating to his role in the Latin Kings[2] organization in Connecticut.  Third Superseding Indictment, United States v. Baez, No. 97-CR-48 (AHN) (Sept. 13, 1998) ["3rd Indict."] [Doc. # 1031].  Specifically, Baez was charged in Count One with violations of the Racketeer Influenced and Corrupt Organizations ["RICO"] Act, 18 U.S.C. § 1962(c); in Count Two with RICO Conspiracy, 18 U.S.C. § 1962(d); and in Counts Three and Four with Violent Crimes in Aid of Racketeering ["VCAR"] for conspiracy to commit murder, 18 U.S.C. § 1959(a)(5).   Id.

---

[2] The Latin Kings were an organized street gang "whose primary business was the distribution of narcotics by means of a racketeering enterprise conducted through a campaign of violent enforcement and retribution."  United States v. Diaz, 176 F.3d 53, 73 (2d Cir. 1999).  Collectively, members of the Latin Kings were charged with various crimes involving violence, drug trafficking, and racketeering.  United States v. Baez, Nos. 98-1428(L), 99-1309, 2001 WL 11051, at *1 (2d Cir. Jan. 4, 2001). The Connecticut Chapter was highly organized, consisting of a "Supreme Crown" with authority over all Latin Kings in the state, five Regional Commanders, and city-based chapters controlled by a leadership council or "Corona."  Id. at 74.  The President of the Connecticut Latin Kings Chapter had supreme authority over every Latin King member in the state.  Id.

On April 5, 1999, the day that trial was to begin, Baez
pleaded guilty to Count Two of the Third Superseding Indictment.
Sentencing was set for May 11, 1999, the remaining charges in the
indictment were dismissed, pursuant to a plea agreement.  Change
of Plea at 34, 43, United States v. Baez, No. 97-CR-48 (AHN)
(Apr. 5, 1999) [hereinafter "Plea Tr."].  Baez remained free on
bond, pending sentencing.  Id. at 42.

On May 7, 1999, a bench warrant was issued for Baez because
he failed to appear at a hearing on his motion for a psychiatric
evaluation.  The government received information that Baez was
attempting to flee the jurisdiction.  Sentencing at 21, United
States v. Baez, No. 97-CR-48 (AHN) (May 14, 1999) [hereinafter
"Sent. Tr."].  On May 8, 1999, members of the U.S. Marshals
Service apprehended Baez at a rest stop on Interstate 95 in
Milford, CT.  Id. at 22-24.  At the time of his arrest, Baez had
in his possession a firearm, ammunition, clothing, false
identifications, approximately $16,000 in cash, pamphlets on how
to assume a new identify, and an automobile that he had purchased
that day.  Id. at 43.

On May 11, 1999, following a hearing, the Court denied Baez'
motion for psychiatric evaluation and scheduled Baez to be
sentenced.  On May 14, 1999, Baez was sentenced to a term of
imprisonment of 228 months, three years supervised released, a
$20,000 fine, and a special assessment fee of $100.  Id. at 75.

Baez appealed his sentence, raising only one issue. Baez argued that the trial court abused its discretion in failing to grant him a psychiatric evaluation prior to sentencing. <u>United States v. Baez</u>, Nos. 98-1428(L), 99-1309, 2001 WL 11051, at *1 (2d Cir. Jan. 4, 2001). The Second Circuit rejected this argument and affirmed his conviction in a summary order dated January 4, 2001. <u>Id.</u> at *2.

On January 10, 2002, Baez filed his initial motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, <u>Baez v. United States</u>, Nos. 97-CR-48 (AHN), 02-CV-68(AHN), (Jan. 10, 2002) ["Init. Hab."] [Doc. # 1390].[3] Baez subsequently filed thirteen (13) motions to amend his initial 28 U.S.C. § 2255 petition. In these motions, he added, modified, and withdrew various claims.

The government filed a response on June 10, 2002. ["1st Govt. Resp."] [Doc. # 1417]. Baez filed a reply brief on July 1,

---

[3] In Baez' first petition, Baez claimed that he was denied effective assistance of counsel because (1) his trial counsel failed to object to errors in his Presentence Report ["PSR"]; (2) his trial counsel failed to object to an inaccurate Sentencing Guidelines calculation; (3) his trial counsel failed to object to the four point leadership enhancement under U.S.S.G. § 3B1.1(a); (4) his trial counsel failed to advise him concerning testimony related to the obstruction of justice enhancement imposed by the Court; (5) his trial counsel failed to advise him of the applicability of an affirmative defense pursuant to Fed. R. Crim. P. 12.3; and (6) his trial counsel failed to advise him of potential jurisdictional defects in the indictment under 18 U.S.C. §§ 1961(c), 1962(d), and 1959(a)(5). Init. Hab.

2002 ["1st Pet'r Resp."] [Doc. # 1419].  More motions ensued.
The government filed an omnibus response on June 2, 2006 ["2d
Govt. Resp."] [Doc. # 1558], and Baez filed a second reply brief
on June 19, 2006 ["2d Pet'r Resp."] [Doc. # 1559].

Baez' § 2255 claims now stand as follows:

Baez claims that he was denied effective assistance of
counsel because (1) his trial counsel failed to object to errors
in his Presentence Report ["PSR"]; (2) his trial counsel failed
to object to an inaccurate Sentencing Guidelines calculation; (3)
his trial counsel failed to object to the four point leadership
enhancement under U.S.S.G. § 3B1.1(a); (4) his trial counsel
advised him not to testify to the obstruction of justice
enhancement; (5) his trial counsel failed to advise him
concerning an affirmative defense pursuant to Fed. R. Crim. P.
12.3; (6) his trial counsel failed to advise him of alleged
jurisdictional defects in the indictment; (7) his trial counsel
failed to advise him of the possibility of a downward departure
pursuant to U.S.S.G. § 5K20.0 for substantial assistance to local
and federal law enforcement; and (8) his trial counsel failed to
inform the Court that Petitioner did not have the ability to pay
a fine within the guideline range.

In addition to his ineffective assistance of counsel claims,
Baez further claims that (9) he should be granted a downward
departure pursuant to U.S.S.G. §5K20.0 based upon aberrant

behavior; (10) his indictment was "constructively amended,"
rendering his conviction unconstitutional; (11) he was denied his
constitutional right to due process when the government allegedly
mischaracterized his contacts with local law enforcement; and
(12) his sentence should be reviewed pursuant to the U.S. Supreme
Court decisions in Blakely v. Washington, 542 U.S. 296 (2004) and
United States v. Booker, 543 U.S. 220 (2005).


III.  STANDARD OF REVIEW

       The Court is mindful that petitioner is proceeding pro se.
As such, the Court construes his claims liberally and reads them
"to raise the strongest arguments that they suggest."  Cole v.
United States, Nos. 00-CR-105 (RPP), 04-CV-2716 (RPP), 2005 WL
217019, at *2 (S.D.N.Y. Jan. 27, 2005) (quoting Graham v.
Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

       It is well-established that errors that might justify
reversal on direct appeal do not necessarily support a collateral
attack on a final judgment under 28 U.S.C. § 2255.  United States
v. Addonizio, 442 U.S. 178, 184 (1979).  "Habeas review is an
extraordinary remedy and 'will not be allowed to do service for
an appeal.'"  Bousley v. United States, 523 U.S. 614, 621 (1998)
(quoting Reed v. Farley, 512 U.S. 339, 354 (1994) (internal
citations omitted)).  In general, "relief is available under §
2255 only for a constitutional error, a lack of jurisdiction in

- 6 -

the sentencing court, or an error of law that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989) (quoting Addonizio, 442 U.S. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

To obtain collateral relief, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).  Habeas petitioners are not entitled to relief from errors brought under a § 2255 claim unless they have had a "substantial and injurious effect," resulting in "actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993).

Claims that are raised for the first time in habeas are procedurally barred unless petitioner can demonstrate either "cause" for the omission and "actual prejudice," or that he is "actually innocent" of the crime charged.  Bousley, 523 U.S. at 622 (internal citations and quotations omitted).  Cause may be demonstrated only by showing that the claims are based either on newly discovered evidence or some other objective factor unavailable to the defense that could not reasonably have been discovered before direct appeal.  United States v. Helmsley, 985 F.2d 1202, 1206 (2d Cir. 1993); Murray v. Carrier, 477 U.S. 478, 488 (1986).  Prejudice may be established if the petitioner shows that the alleged error worked to his "actual and substantial

disadvantage."  <u>Frady</u>, 456 U.S. at 170.  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  <u>Bousley</u>, 523 U.S. at 623 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327–328 (1995) (internal citations omitted)).  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  <u>Bousley</u>, 523 U.S. at 623 (internal citations omitted).


IV.  <u>DISCUSSION</u>

    Petitioner's first eight (8) claims allege that he was denied effective assistance of counsel.  In addition, petitioner alleges that the indictment under which he was charged was "constructively amended" in violation of the Sixth Amendment. Petitioner further alleges that he was denied his right to due process of law when the government allegedly mischaracterized his contacts with local law enforcement.  Petitioner requests that the Court grant him a downward departure based upon aberrant behavior.  Finally, he asks that the Court review his sentence pursuant to the U.S. Supreme Court decisions in <u>Blakely</u> and <u>Booker</u>.  The Court discusses each claim below.

    It should be noted that, throughout petitioner's claims for ineffective assistance of counsel, his arguments are unclear.  In

many, but not all, of his claims, petitioner appears to be arguing both that his counsel was ineffective in failing to raise a particular claim and that the Court should review the merits of the claim itself, as though it were sitting on direct appeal.

To the extent that petitioner challenges the merit of the claims themselves, all of his claims are procedurally barred.  It is well-settled that claims raised for the first time in habeas are procedurally barred unless petitioner can demonstrate either "cause" for the omission and "actual prejudice," or that he is "actually innocent" of the crime charged.  In this case, petitioner did not raise any of his claims at appeal.  <u>See</u> <u>United States v. Baez</u>, Nos. 98-1428(L), 99-1309, 2001 WL 11051, at *1 (2d. Cir. Jan. 4, 2001).  Nor did he establish cause, prejudice, or actual innocence in any of his claims.  Thus, he cannot ask the court to now review them in habeas.  Additional bases for procedural bar will be discussed in each section below as appropriate.[4]

---

[4] While it is generally the case that claims not raised on direct review may not be raised for the first time in a habeas petition absent a showing of cause and prejudice, the procedural bar does not apply to a claim of ineffective assistance of counsel. <u>Massaro v. United States</u>, 538 U.S. 500, 506 (2003).  The U.S. Supreme Court has held that failing to raise a claim of ineffective assistance of counsel on direct review does not bar the claim from being brought for the first time in a habeas petition.  <u>Id.</u> at 506.  This is not to say that the merits of the underlying claim may escape the procedural bar by being brought under an ineffective assistance of counsel claim.  The Court distinguished between assessing the merits of the underlying claim and evaluating counsel's performance under the

A.   Ineffective Assistance of Counsel

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."   Strickland v. Washington, 466 U.S. 668, 686 (1984).   The petitioner has the burden of identifying specific acts or omissions of counsel that are alleged to be outside the wide range of acceptable professional conduct.   Id. at 690.   To prevail on such a claim, the petitioner must show both 1) that counsel's performance was deficient, such that it falls outside a "wide range of reasonable professional assistance" and might not have been "considered sound trial strategy," id. at 689-90; and 2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Id. at 694.

Great deference must be granted to trial counsel's judgment.   Id. at 689.   It is all too tempting to view such claims with the benefit of hindsight after a conviction or an adverse sentence.   Id.   Consequently, there must be "a strong

_____

ineffective assistance claim.   Id. at 504-06.   In this case, the Court notes that the merits of the claims themselves are procedurally barred and assesses the ineffective assistance of counsel claims below.

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "[C]ounsel has wide latitude in deciding how best to represent a client." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam).

This means that "[t]he Strickland standard is rigorous . . . . [T]he great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Linstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97 (internal citations omitted)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough, 540 U.S. at 8 (internal citations omitted).

### 1. Failure to object to errors in PSR

Petitioner's first claim is that his counsel was ineffective because he failed to object to "errors" in the PSR regarding the two predicate acts of racketeering required 18 U.S.C. § 1962(d). Specifically, he alleges that "one of the offenses to which he

pleaded [guilty] was not an element charged in the indictment."
Mem. of Law at 13, <u>Baez v. United States</u>, Nos. 97-CR-48 (AHN),
02-CV-68 (AHN) (Dec. 31, 2001) ["Pet'r Mem."].  He claims that he
was therefore improperly sentenced for an act to which he did not
plead guilty.  Petitioner cites <u>United States v. Thomas</u>, 274 F.3d
655 (2d Cir. 2001), and <u>United States v. Tran</u>, 234 F.3d 798 (2d
Cir. 2000), to stand for the proposition that where an element of
a crime is not charged in the indictment, the sentence cannot
stand.

Petitioner's argument is unclear, and he seems to be raising
two claims that are intertwined.  First, he states that because
he allegedly did not admit to the named Netas conspiracy[5] at the
change of plea proceeding, his counsel should have objected to
its inclusion in the PSR.  Pet'r Mem. at 14; Pet'r Baez' Resp. to
the Government's Resp. at 11, <u>Baez v. United States</u>, Nos. 97-CR-
48 (AHN), 02-CV-68 (AHN) (Jun. 29, 2002) ["1st Pet'r Resp."].
Concurrently, he argues that his attorney should have objected to

---

[5] The government proffered evidence of the "Netas conspiracy" at
the change of plea proceeding.  Plea Tr. at 28-32.  The Netas
conspiracy was a plan for members of the Latin Kings to murder
members of the Netas, a rival gang, in retaliation for their
murder of a Latin King member.  <u>Id.</u> at 29.  At the plea, the
government stated that petitioner was consulted by his Latin King
subordinates with regard to the plan to murder members of the
Netas.  <u>Id.</u>  The government stated that petitioner authorized the
Latin Kings to carry out the plan.  <u>Id.</u> at 30.  The government
proffered evidence that after the mission to murder the Netas had
been attempted, a witness reported the status of the plan to the
petitioner.  <u>Id.</u> at 31.  Petitioner did not attempt to dissuade
the Latin Kings from continuing with the plan.  <u>Id.</u>

his guilty plea because only one of the two predicate acts that he admitted to was named in the indictment.  Petitioner asserts that without two predicate acts that match the ones named in the indictment, the guilty plea was improper.  Pet'r Mem. at 14. Both of these arguments are unavailing.

    a.    Petitioner's claim that his conviction should be
          vacated is procedurally barred

To the extent that petitioner claims that his conviction should be vacated because an element of the offense was not charged in the indictment, this claim is procedurally barred because he did not raise it on direct appeal.  Components of a guilty plea "can be attacked on collateral review only if first challenged on direct review.  Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley, 523 U.S. at 621 (internal citations and quotations omitted).  Absent a showing of cause and prejudice or actual innocence, a petitioner may not raise a claim for the first time in a habeas petition.  Massaro v. United States, 538 U.S. 500, 504 (2003).

On direct appeal, petitioner argued only that the trial court abused its discretion in denying his motion for a psychiatric evaluation prior to sentencing.  United States v. Baez, Nos. 98-1428(L), 99-1309, 2001 WL 11051 (2d Cir. Jan. 4, 2001).  Thus, petitioner's new claim is foreclosed, short of a

showing of cause and prejudice or actual innocence.  Petitioner
has not attempted such a showing.

      b.    <u>Petitioner's counsel was not ineffective for failing
             to object to the inclusion of the Netas conspiracy in
             the PSR</u>

Petitioner claims that his counsel should have objected to
the inclusion of the Netas conspiracy in his PSR.  He claims that
because he did not specifically admit to it at the change of plea
proceeding, the PSR should not have included it.  Because it did,
he alleges, he was sentenced "for an offense to which he did not
plead" guilty.  This claim is unavailing.

      (I)   <u>There was nothing for Counsel to object to, so
            his performance was not deficient</u>

Counsel was not deficient in failing to object to the
inclusion of the Netas conspiracy in the PSR because petitioner
had admitted responsibility for the act.  For an attorney to
successfully object to errors in a PSR, he must show that the
information used in calculating the sentence was "both false and
relied on by the sentencing judge."  <u>Guippone v. United States</u>,
741 F. Supp. 409, 411 (S.D.N.Y. 1990), <u>aff'd</u> 930 F.2d 910 (2d
Cir. 1991).  It is not error for counsel to fail to raise claims
that lack merit.  <u>See</u> <u>Duarte v. United States</u>, 289 F. Supp. 2d
487, 492 (S.D.N.Y. 2003) (holding that the defendant "certainly
was not prejudiced by the fact that a claim lacking in merit was
not made on his behalf").

In this case, petitioner has not shown that the information in the PSR was false.  Although petitioner was unable to recollect the Netas conspiracy at the change of plea proceeding, his memorandum in support of his habeas petition noted that he had accepted responsibility for authorizing the Netas conspiracy in a subsequent discussion with the Probation Office.  Pet'r Mem. at 22.  The government proffered detailed evidence supporting petitioner's involvement in the Netas conspiracy at the change of plea proceeding.  Plea Tr. at 18-19, 25-31.  Petitioner agreed that the government would be able to present that evidence at trial.  Id. at 33.  Other than his self-serving allegation here, petitioner has not offered any evidence sufficient to contradict his admission to the probation officer and show that the information contained in the PSR was false.

Because petitioner has not met the first requirement of Strickland, his claim fails.

(ii) The Outcome Would Not Have Been Different

Even if the Court agreed that counsel should have objected to the inclusion of the Netas conspiracy in the PSR, petitioner has not shown that the outcome would have been different. Petitioner's base offense level had been calculated based on a predicate act of conspiracy to commit murder.  See U.S.S.G. §§ 2E1.1, 2A1.1, 2A1.5; 1st Govt Resp. at 13.  Even if the Netas conspiracy had been removed, petitioner had already admitted to

another conspiracy to commit murder—the Chino conspiracy.[6]  The
government proffered evidence of the conspiracy, characterizing
it as a conspiracy to commit murder.  Plea Tr. at 27.  Petitioner
was asked if he agreed with the government's rendition.  Id. at
21.  He did not object to the Chino conspiracy or to the
government's characterization of it.  Id.  Even if counsel had
objected to the Netas conspiracy, the base offense level would
still have been based upon a conspiracy to commit murder.  1st
Govt. Resp. at 13.  Therefore, the outcome would not have
changed.

Petitioner's claim that counsel was ineffective for failure
to object to errors in his PSR is **DENIED**.

---

[6] Petitioner admitted to "the Chino conspiracy" at the change of
plea proceeding:

> DEFENDANT:. . . in that particular incident, Pucho and
> Chino- . . . Chino was a Latin King member, and
> they had been kind of terrorizing the section
> with shootings and there'd been shootings back
> and forth there, and after a while it was
> becoming such a tiresome issue that it was raised
> to my attention as to what to do about it.  And
> the only reason why action wasn't taken was
> because Chino was a Latin King brother and he was
> prohibited by the charter to do any actions, and
> when the request came to me to make a decision on
> that, I essentially terminated Chino's membership
> in the organization, knowing that the
> individuals, the Latin King members that had a
> beef with him would in all likelihood take that
> as a sign of permission to go and retaliate.

Plea Tr. at 23-25.

c. Petitioner's counsel was not ineffective for allowing petitioner to plead guilty to RICO conspiracy

Petitioner claims that his counsel was ineffective because he allowed him to plead guilty to RICO conspiracy even though Baez disagreed with one of the predicate acts named in the indictment. Petitioner alleges that even though he admitted to two predicate acts in furtherance of the enterprise, the fact that one of them was not named in the indictment means that a factual basis for the guilty plea had not been established. He claims that his counsel should have prevented him from pleading guilty because the plea was invalid. The Court disagrees.

(I) Counsel's actions were a matter of trial strategy, and petitioner has not overcome the presumption of competence

Counsel's actions were a matter of trial strategy falling within the wide range of professional competence that is presumed. The Supreme Court has held that strategic choices made by trial counsel after thorough investigation are "virtually unchallengeable" on collateral review. Strickland, 466 U.S. at 690. In this case, counsel's actions fall within this realm.

At the change of plea proceeding, petitioner allocuted to two predicate acts but claimed that he did not recall having authorized the Netas mission. Plea Tr. at 33. Counsel then represented to the Court that the government was engaged in ongoing discussions with his client about that mission:

THE COURT: Dr. Baez, do you agree with the prosecutor's summary of what you did?

DEFENDANT: Well, your Honor, I do have some minor differences with the account. . . .  I don't have a specific recollection of having met and discussed the Neta[s] mission with anyone at the McDonald's.  I was asked the questions in proffer, and to the best of my recollection I did not authorize that particular activity.

MR. ZIMMERMAN: We do agree that the government would present that evidence, were this to go to trial, and we have acknowledged and accepted responsibility for two predicate acts of racketeering to satisfy the elements of count two.  **We would like the opportunity to discuss with Agent Dillon and Agent Hosney and the prosecutor more specifics about this meeting at McDonald's where this mission was allegedly authorized,** but until then, it is – and this is in prior discussions with the government, Dr. Baez has not been able to bring that back into, into his memory but maybe that will be the case.

Id. at 31–33 (emphasis added).

The colloquy shows counsel understood the issue and intended to work with the government through discussion, presumably for his client's benefit.  His statements above support the conclusion that counsel considered the strategic implications of his actions and made decisions accordingly.  Petitioner offered no evidence other than his own assertions to rebut the presumption of counsel's competence.

The Court finds that counsel's actions fall within the wide range of competence presumed and could have been considered trial strategy.

(ii)  <u>The Outcome Would Not Have Been Different</u>

Even if the Court accepts the argument that counsel should not have allowed petitioner to plead guilty to the RICO conspiracy charge because one of the predicate acts he admitted to was not charged in the indictment, petitioner's claim still fails because the outcome of the proceedings would not have changed.  Petitioner had already admitted to the essential elements of the RICO conspiracy.

In the Second Circuit, the law is clear.  "In the context of a conspiracy charge, the Government need not set out with precision each and every act committed in furtherance of the conspiracy, particularly where the acts proven at trial were part of the overall scheme in furtherance of that scheme."  <u>United States v. Cohen</u>, 518 F.2d 727, 733 (2d Cir. 1975) (internal citations and quotations omitted).  "The Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy."  <u>United States v. LaSpina</u>, 299 F.3d 165, 182 (2d Cir. 2002) (quoting <u>United States v. Bagaric</u>, 706 F.2d 42, 64 (2d Cir. 1983), <u>abrogated on other grounds by</u> <u>Nat'l Org. for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 259-60 (1994)).

In this case, the indictment specifically describes the methods and means of the enterprise:  "[m]embers of the Latin Kings and their associates would and did conspire to commit,

attempt to commit, threaten to commit, commit and solicit the

commission of acts of violence, including murder, robbery and

assaults."  3rd Indict. ¶ 10(I).  At his plea proceeding,

petitioner admitted his role as President of the Latin Kings and

to two specific predicate acts:  authorizing the "Seaside

Assault" and authorizing the conspiracy to murder Pucho and

Chino.  Plea Tr. at 23-25.  Specifically, petitioner stated:

> THE COURT: Are you guilty of the charges contained in count
>            two of the indictment?
>
> DEFENDANT: Yes, sir, I am.
>
> THE COURT: Tell me what you did and what your role was in
>            this, these offenses.
>
> DEFENDANT: [As] president of the Latin Kings, I had the
>            authority and the ability to take, make decisions
>            of particular activities.  And on several
>            occasions, . . . I consented to certain
>            activities that were going to result, or that I
>            thought were going to result in harm to other
>            individuals.
>
> THE COURT: And what . . . activities were those?
>
> DEFENDANT: One incident was a situation at Seaside Park
>            where an individual was going to get a
>            disciplinary procedure.  Basically he was going
>            to get beat up, disciplinary thing, and I
>            consented to that, agreed to that, and instructed
>            them to carry that out.
>
> THE COURT: And what was the other?
>
>                             - - -
>
> DEFENDANT: . . . in that particular incident, Pucho and
>            Chino-and Chino was a Latin King member, and they
>            had been kind of terrorizing the section with
>            shootings and there'd been shootings back and

> forth there, and after a while it was becoming
> such a tiresome issue that it was raised to my
> attention as to what to do about it.  And the
> only reason why action wasn't taken was because
> Chino was a Latin King brother and he was
> prohibited by the charter to do any actions, and
> when the request came to me to make a decision on
> that, I essentially terminated Chino's membership
> in the organization, knowing that the
> individuals, the Latin King members that had a
> beef with him would in all likelihood take that
> as a sign of permission to go and retaliate.

Id. at 23-25.

The government outlined in great detail the nature and basis
of the charge against petitioner.  Id. at 18-19,25-31.  They
proffered evidence against him concerning the two incidents
described above as well as the conspiracy to murder members of
the Netas.  Id.

The Court asked petitioner whether he understood and agreed
with the government's summary.  Although Baez stated that he had
some minor differences with the account, both he and his counsel
agreed to the proof that the government would have offered at
trial concerning the incidents:

> THE COURT: Dr. Baez, do you agree with the prosecutor's
> summary of what you did?
>
> DEFENDANT: Well, your Honor, I do have some minor
> differences with the account. . . .  I don't have
> a specific recollection of having met and
> discussed the Neta[s] mission with anyone at the
> McDonald's.  I was asked the questions in
> proffer, and to the best of my recollection I did
> not authorize that particular activity.

MR. ZIMMERMAN: We do agree that the government would present that evidence, were this to go to trial, and we have acknowledged and accepted responsibility for two predicate acts of racketeering to satisfy the elements of count two. . . .

THE COURT: Well, if there were to be a trial, is there any substantial disagreement that the government would offer proof along the lines just indicated by [the Assistant U.S. Attorney]?

MR. ZIMMERMAN: There would be no disagreement they would offer that evidence, your Honor.

THE COURT: You disagree with that, Dr. Baez?

DEFENDANT: No, I believe they will offer that evidence.

Id. at 32-33.

It is clear from the exchanges above that counsel believed the government had sufficient evidence to convict petitioner if he went to trial. By admitting to two predicate acts in furtherance of the enterprise, Baez admitted the essential elements of the RICO conspiracy. A factual basis for the offense was clearly established at the change of plea proceeding. See LaSpina, 299 F.3d at 182; Bagaric, 706 F.2d at 64; Cohen, 519 F.2d at 733.

Based on the above evidence, it was not ineffective for counsel to allow petitioner to plead guilty. This claim of ineffective assistance of counsel is **DENIED.**

2.    Failure to object to an inaccurate Guideline
      Calculation

Petitioner next claims that his trial counsel should have objected to the Guideline Sentencing calculation because it was inaccurate.  He argues that his admissions do not support a sentence based upon conspiracy to commit murder and that his base offense level was incorrect.  Pet'r Mem. at 21.  Petitioner claims that his counsel should have objected to the incorrect calculation.  Pet'r Mem. at 24.  The Court rejects this argument.

a.    Petitioner's claim that the guideline calculation was
      in error is procedurally barred

To the extent that petitioner is asserting that his sentence is flawed because of an error in the guideline calculation, his claim is procedurally barred and cannot be raised on collateral review.  The Second Circuit has held that absent a "complete miscarriage of justice," a claim of error in sentencing calculation will not be heard on collateral review where the petitioner has failed to raise it on direct appeal.  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996); accord Massaro, 538 U.S. at 504 (holding that absent a showing of cause and prejudice, or actual innocence, a petitioner may not raise a claim for the first time in habeas).

On direct appeal, petitioner argued only that the trial court abused its discretion in denying his motion for a psychiatric evaluation prior to sentencing.  United States v.

- 23 -

<u>Baez</u>, Nos. 98-1428(L), 99-1309, 2001 WL 11051 (2d Cir. Jan. 4, 2001).  Because petitioner did not raise the claim that the guideline calculation was inaccurate on direct appeal, he is barred from raising it here, absent a showing of cause and prejudice or actual innocence.  Petitioner has not attempted such a showing.

     b.   <u>Counsel was not ineffective in failing to object to the guideline calculation.</u>

To the extent that petitioner is arguing that he was denied effective assistance of counsel because his attorney did not object to the base offense level calculation, this argument fails.  Petitioner has not shown that his counsel's performance was deficient or that the outcome would have been different.

     (I)   <u>Counsel's performance was not deficient.</u>

Petitioner argues that counsel should have objected to the sentencing calculation, as it was incorrectly based upon an underlying RICO violation of conspiracy to commit murder.  Pet'r Mem. at 21.  He claims that the Chino conspiracy was not actually a conspiracy to commit murder.  Pet'r Mem. at 21.  The Court disagrees.

For an attorney to successfully object to errors in a PSR, he must show that the information used in calculating the sentence was false.  <u>Guippone</u>, 741 F. Supp. at 411 (S.D.N.Y. 1990), <u>aff'd</u> 930 F.2d 910 (2d Cir. 1991).  It is not error for

counsel to fail to raise claims that lack merit.  See Duarte, 289 F. Supp. 2d at 492 (holding that the defendant "certainly was not prejudiced by the fact that a claim lacking in merit was not made on his behalf").

In this case, there is no false information contained in the PSR.  Petitioner clearly allocuted to the Chino murder conspiracy at the plea proceeding and did not object to the government's rendition of it, including its characterization as a conspiracy to commit murder.  Plea Tr. at 24-25, 32.  He admits that he accepted responsibility for the Netas conspiracy while in discussions with the Probation Office.  Pet'r Mem. at 22.  Given Petitioner's own admissions, there was no information used in the guideline calculation that was inaccurate.  Counsel had no basis to object to the inclusion of the Netas conspiracy in the PSR. Therefore, it was not error for counsel to fail to do so.

(ii) The Calculation Would Not Have Changed

Even if the Netas conspiracy had been omitted, petitioner's base offense level would have been the same.  Petitioner had admitted his role in the Chino murder conspiracy.  Petitioner's base offense level was based on a conspiracy to commit murder: the conspiracy to murder Pucho and Chino.  See U.S.S.G. §§ 2E1.1, 2A1.1, 2A.5; 1st Govt. Resp. at 13.  His base offense level was not increased because he had two conspiracies to commit murder. 1st Govt. Resp. at 13.  Even if the Netas conspiracy were dropped

- 25 -

from the PSR, the Chino conspiracy to commit murder charge would have remained.  The sentencing calculation would therefore have been unaffected.

Petitioner has not shown that his counsel's performance was deficient or that the outcome would have changed.  This claim for ineffective assistance of counsel is therefore **DENIED**.

> 3.   Failure to object to the Four-Point Enhancement for Leadership

Petitioner claims that his trial counsel should have objected to the four-point enhancement for leadership under U.S.S.G. § 3B1.1.  Baez claims that the Court failed to make findings of fact regarding the number of participants involved and the extensiveness of the enterprise.  Pet'r Mem. at 32.  The Court disagrees.

> a.   The Error in Sentencing Calculation is Procedurally Barred

The Court notes that, as discussed <u>supra</u> in Section IV.A.2.a, the claim that the sentencing calculation was in error is procedurally barred.  The Second Circuit has held that absent a "complete miscarriage of justice," a claim of error in sentencing calculation will not be heard on collateral review where the petitioner has failed to raise it on direct appeal. <u>Graziano</u>, 83 F.3d at 590.  In <u>Graziano</u>, the defendant claimed that the imposition of a $250,000 fine was in error because the district court did not specifically enumerate the factors

- 26 -

considered in calculating the fine.  The Second Circuit upheld
the sentence, noting that because the defendant had been informed
as to the possibility of a $250,000 fine and voluntarily entered
a guilty plea, there was no "complete miscarriage of justice."
Id.

In this case, on appeal petitioner raised only the claim
that the trial court abused its discretion in failing to grant
him a psychiatric evaluation.  Like the petitioner in Graziano,
petitioner was repeatedly informed of the possibility of the
statutory maximum sentence of twenty (20) years, yet chose to
enter a guilty plea.  Plea Tr. at 13, 15-16, 19.  The sentence
imposed falls below the maximum.  The Court may not now
substitute consideration of the claim on habeas for a direct
appeal that petitioner failed to make.

Even if the Court were to find this claim not procedurally
barred, the Court notes that the sentencing judge specifically
found the following:

> **The court finds** that because of the violence, the
> condoning of violence, the continuing of beatings, the
> condoning of the double homicide, the use of weapons,
> **the ascendancy to the presidency of an organization
> that you knew were involved in drug dealings and
> murders and beatings,** all of which warrant a sentence
> of 228 months, a period of supervised release of three
> years, the court imposes a fine of twenty thousand
> dollars and a special assessment of one hundred
> dollars.

Sent. Tr. at 75-76 (emphasis added).  The record is clear that
the Court did make a leadership finding.

      b.   <u>Petitioner was not deprived of effective assistance of
         counsel</u>

     To the extent that petitioner is arguing that his counsel
should have objected to the leadership enhancement, this claim
fails.  Petitioner has not shown that his counsel was deficient
in failing to object or that there is a reasonable likelihood
that the outcome would have been different.

          (I)  <u>There was no basis for counsel to object</u>

     For an attorney to successfully object to errors in a
sentencing calculation, he must show that the information used in
calculating the sentence was false.  <u>Guippone</u>, 741 F. Supp. at
411.  At the change of plea proceeding, petitioner repeatedly
stated that he was President of the Latin Kings.  Plea Tr. at 10,
23-24.  Petitioner did not dispute the government's recitation of
the basis of the charge against him, including the nature of his
leadership role.  <u>Id.</u> at 32.  He described his involvement with
the Latin Kings at his sentencing, naming at least five
participants and multiple locations, both in Connecticut and New
York.  <u>Id.</u> at 52-61.  The sentencing judge specifically found
that petitioner was the president "of an organization that [he]
knew [was] involved in drug dealings and murders and beatings."
Sent. Tr. at 75.  Petitioner's admissions and the government's

- 28 -

proffer make clear that petitioner was the leader of a criminal organization that involved five or more participants or was otherwise extensive, as required under U.S.S.G. § 3B1.1.  There was no basis for counsel to object; his failure to do so was not deficient.

           (ii)  <u>The Outcome Would Have Been the Same</u>

Even if the Court agreed that counsel should have objected, the outcome would not have been different.  The leadership enhancement was supported by petitioner's admissions and the Court's findings.

For the foregoing reasons, petitioner's this claim for ineffective assistance of counsel is **DENIED**.

      4.    <u>Failure to Correctly Advise Defendant Concerning Testimony Relating to Obstruction of justice Enhancement</u>

Baez claims that his counsel provided him ineffective assistance of counsel because he advised him to remain silent and not contest evidence concerning the obstruction of justice enhancement.  The Court disagrees.

        a.   <u>Counsel's decision was a matter of trial strategy</u>

Counsel's decision not to call petitioner as a witness falls squarely within the realm of trial strategy.  The Second Circuit has held that the decision of whether or not to call a particular witness is a strategic decision that is difficult to second-guess.  <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir.

1998), <u>cert denied</u>, 526 U.S. 1164 (1999); <u>see also</u> <u>Trapnell v.</u>
<u>United States</u>, 735 F.2d 149, 155 (2d Cir. 1983) (holding that
trial counsel's decision as to which witnesses should be called
are "matters of trial strategy" and may not form "the basis for a
finding of ineffective assistance").  The Court finds that
counsel's decision to advise his client not to testify was
reasonable and within his strategic discretion, particularly in
light of the fact that by testifying, the petitioner would have
had to admit to the crime of failure to appear.

        b.   <u>The Outcome would not have changed</u>

Even if counsel erred by advising petitioner to remain
silent, the claim still fails because the petitioner's testimony
was unlikely to change the outcome of the proceeding.  The
evidence against him was "overwhelming."  Petitioner missed his
own court proceeding.  Sent. Tr. at 21.  He was apprehended by
U.S. Marshals on I-95 with large amounts of cash, a firearm,
ammunition, clothing, false identification, and an automobile
that he had purchased the same day.  <u>Id.</u> at 43.  Petitioner had
lied to the Probation Office.  <u>Id.</u> at 44.  Petitioner offered no
evidence other than his self-serving allegation that there was
another explanation for his flight.  His claim that his counsel
was ineffective for not having him testify is clearly without
merit.

Petitioner's fourth claim for ineffective assistance of counsel is **DENIED**.

5.   <u>Failure to advise Baez of Public Authority Defense</u>

Petitioner claims that his counsel provided him ineffective assistance because he did not advise him that he was eligible for a defense based upon public authority, pursuant to Fed. R. Crim. P. 12.3.  Fed. R. Crim. P. 12.3 allows a defendant to assert a defense based upon actual, not apparent, exercise of public authority on behalf of law enforcement.  <u>See</u> <u>United States v.</u> <u>Duggan</u>, 743 F.2d 59, 84 (2d Cir. 1984); Fed. R. Crim. P. 12.3. Baez argues that his counsel should have pursued a public authority defense based upon Baez' belief that he was working under the direction of Agent David Dillon.  This claim is without merit.

a.   <u>Counsel has wide latitude to determine what</u>
     <u>avenues of investigation to pursue</u>

Counsel's conduct was within accepted standards of professional representation.  Considerable deference must be given to counsel's judgment as to what avenues of investigation to pursue in defending a client, particularly in light of facts presented to him by the defendant.  <u>Strickland</u>, 466 U.S. at 691.

In this case, counsel had no reason to believe that Baez would have been eligible for a public authority defense.  A public authority defense requires a defendant to show that a

government official authorized his conduct.  See Duggan, 743 F.2d at 84; United States v. Apperson, 441 F.3d 1162, 1206 n.15 (10th Cir. 2006) (rejecting a public authority defense where the defendant offered no evidence that any official authorized him to engage in the acts for which he was convicted. The Court noted that defendant's own testimony "was insufficient to establish the public authority defense.").  Petitioner offered no evidence to indicate that Agent Dillon authorized his activities or that he was working under Agent Dillon's direction.  In fact, Agent Dillon did not encourage petitioner's activities and had advised him to get out before it was too late:

> DEFENDANT:  I felt particularly close to [Agent Dillon].  He would tell me sometimes that I was getting into things that were very, very difficult, you know, that I couldn't handle it, but --

> THE COURT: He said to you once, according to Mr. Zimmerman's sentencing memorandum, he quotes Agent Dillon as saying to you, "Eddie, you are not going to bring these guys up, they are going to bring you down."

> DEFENDANT:  Yes, sir, and those words –

> THE COURT:  That was very prophetic.

> DEFENDANT:  It's etched in my mind.  Had I listened to Agent Dillon at that time, if I'd been in a frame of mind to listen, I certainly could have gotten out before I got deeper in and ultimately implicated in all of these things.

Id. at 51.  This admission is evidence that Agent Dillon did not condone, much less authorize, petitioner's activities.

Counsel cannot be faulted for failing to raise a defense that was doomed to fail.  <u>Duarte</u>, 289 F. Supp. 2d at 492 (holding that a defendant "certainly [is] not prejudiced by the fact that a claim lacking merit was not made on his behalf").

        b.   <u>The Outcome Would Not Have Changed</u>

Defendant's claim is directly contradicted by his own statements.  A public authority defense requires a defendant to show that a government official authorized his conduct.  <u>See</u> <u>Duggan</u>, 743 F.2d at 84; <u>Apperson</u>, 441 F.3d at 1206 n.15 (rejecting a public authority defense where the defendant offered no evidence that any official authorized him to engage in the acts for which he was convicted. The Court noted that defendant's own testimony "was insufficient to establish the public authority defense.").  Baez admits in his reply brief that "SA Dillon did not specifically 'empower' Baez to perform the acts of which he was convicted."  Pet'r Resp. at 18.  Since Agent Dillon did not authorize petitioner to perform those acts, if counsel had raised a public authority defense, it would have failed.

This claim for ineffective assistance of counsel is **DENIED**.

6.    Failure to advise Baez of Jurisdictional Defects in
      the Indictment

Baez's sixth claim is that his counsel was ineffective
because he did not advise him that the indictment allegedly did
not satisfy the requirements of the commerce clause enabling
federal jurisdiction.  His amended petition also argues that
because the indictment did not satisfy jurisdictional elements,
he is "actually innocent."

Petitioner argument here is tangled.  He seems to be arguing
both that the conviction should be vacated because of
jurisdictional defects in the indictment, Pet'r Mem. at 64-67,
and that his counsel was ineffective in failing to raise that
claim.  Pet'r Mem. at 49.  The court addresses both arguments
below.

a.  Baez' claim is procedurally barred

To the extent that Baez is arguing that his conviction
should be vacated because of alleged jurisdictional defects in
the indictment, this claim is procedurally barred because it was
not raised on direct review.  The Supreme Court has held that
claims not raised on appeal may not be raised in habeas unless
the petitioner has established both "cause" and "prejudice" or
that he is "actually innocent."  Bousley, 523 U.S. at 622.  In
the case of guilty pleas, the standard is quite strict:  "It is
well settled that a voluntary and intelligent plea of guilty made

by an accused person, who has been advised by competent counsel, may not be collaterally attacked." <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984).

Petitioner raises this claim for the first time in this proceeding. <u>See</u> <u>United States v. Baez</u>, Nos. 98-1428(L), 99-1309, 2001 WL 11051 (2d Cir. Jan 4, 2001). Petitioner has not attempted to demonstrate "cause" and "prejudice" as to why the claim should be reviewed in habeas. Indeed, petitioner specifically fails to demonstrate "cause" because he admitted that he raised this issue to his attorney, but his attorney chose not to present it. Pet'r Mem. at 49.

To the extent that petitioner is arguing that he is "actually innocent" and his jurisdictional claim should be reviewed in habeas, this argument also fails. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623. Baez does not claim that he is factually innocent and presents no evidence to rebut the admissions made in his guilty plea. Therefore, this argument fails.

> b.   <u>Counsel was not ineffective in failing to raise the</u>
> <u>jurisdictional question because the outcome would not</u>
> <u>have been different</u>

To the extent that Baez is arguing that his counsel was ineffective in failing to raise a jurisdictional question, this

claim fails.  Baez has not shown that if his counsel had raised the issue, the outcome of the proceeding would likely have been different.

The Second Circuit has held that "narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce."  United States v. Miller, 116 F.3d 641, 674 (2d Cir. 1997)(quoting United States v. Genao, 79 F.3d 1333, 1336 (2d Cir. 1996)).  The Second Circuit has continued to uphold RICO and related convictions based upon narcotics activity.  Accord United States v. Feliciano, 223 F.3d 102, 119 (2d Cir. 2000) ("the racketeering activity that satisfies the jurisdictional element in this case – narcotics trafficking—is clearly economic in nature and has been found by Congress to have a substantial effect on interstate commerce"); United States v. Vasquez, 267 F.3d 79, 87–90 (2d Cir. 2001) (holding that a racketeering enterprise's involvement in narcotics trafficking affects interstate commerce).

In this case, both the indictment and the evidence satisfy the requirements for federal jurisdiction.  The indictment explicitly identifies drug trafficking as an activity of the enterprise.  Paragraph 9(a) states:  "[f]acilitating, promoting, protecting, and enhancing the drug trafficking activities of its members" are among the objects of the enterprise.  3d Indict. ¶ 9(a).  Paragraph 10 states: "[m]embers of the Latin Kings and

their associates would and did travel and use facilities in interstate commerce in aid of their racketeering activities" and notes the use of the United States Postal Service and cellular telephones in furtherance of the enterprise. <u>Id.</u> at ¶ 10. At the change of plea proceeding, the government detailed the extent of the enterprise and its narcotics-related activities. Plea Tr. at 25-32. Petitioner did not object to the government's characterization. <u>Id.</u> Petitioner admitted that he was president of the enterprise. <u>Id.</u> at 24. As in the cases cited above, narcotics activity forms a nexus to interstate commerce sufficient to support federal jurisdiction. The Court's exercise of jurisdiction was proper.

Petitioner's sixth claim is **DENIED**.

7. <u>Failure to Request Downward Departure for Substantial Assistance</u>

In his Motion to Amend dated September 25, 2002, petitioner argues that, consistent with his fifth claim, counsel should have sought a downward departure pursuant to U.S.S.G. § 5K2.0 for substantial assistance to federal and local law enforcement authorities. Mot. to Amend 28 U.S.C. § 2255 Mot., <u>Baez v. United States</u>, Nos. 97-CR-48 (AHN) and 02-CV-48 (AHN) (Sept. 25, 2002) [Doc. # 1421]. Petitioner asserts that his assistance to Agent Dillon and to the West Haven police department qualifies him for a downward departure. This argument is unavailing.

a.  <u>There was no basis for counsel to ask for a downward departure based on substantial assistance</u>

There was no basis for counsel to ask for a downward departure based on substantial assistance, so counsel's performance was not deficient.  "In order to justify a downward departure, 'defendant's conduct [must be] so extraordinary that it falls outside the heartland of cases covered by the guidelines.'"  <u>United States v. Korman</u>, 343 F.3d 628, 631 (2d Cir. 2003) (quoting <u>United States v. Gaines</u>, 295 F.3d 293, 303 (2d Cir. 2002)).  The Court also stated that a downward departure for substantial assistance is not mandatory.  <u>Korman</u>, 343 F.3d at 631.  "Although a court's decision not to depart under [§ 5K2.0]t is largely unreviewable, <u>United States v. McCarthy</u>,  271 F.3d 387, 401 (2d Cir. 2001), a trial court's determination that a factor is categorically excluded from consideration is a question of law, which we review de novo.  See <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996)."  <u>Gaines</u>, 295 F.3d at 303.

In <u>Korman</u>, the defendant had testified in an unrelated murder trial in state court about a murder that had occurred twenty five (25) years earlier.  <u>Id.</u> at 628.  The district attorney in that case submitted a letter to the court, calling the defendant's testimony "essential" to identifying the perpetrator.  <u>Id.</u> at 630.  Pursuant to U.S.S.G. § 5K2.0, the district court granted the defendant a three-level downward

departure for substantial assistance.  Id.  But the Second Circuit remanded the case for resentencing, holding that the district court had erred in granting the departure.  Id. at 631. The defendant had merely testified that he had seen three individuals together, one of whom was murdered later that day, at the location where he worked.  Id. at 631.  The Court held that routine testimony at a state trial was one's civic duty, not something outside the heartland of cases covered by the guidelines to justify a downward departure.  Id. The Court rejected the district court's downward departure for substantial assistance.  Id.; see also  Gaines, 295 F.3d at 303 (affirming a decision not to grant a downward departure based on a defendant's testimony in a state court proceeding finding defendant's prior actions commendable but not so extraordinary as to warrant a downward departure).

In this case, petitioner was not working for either federal or local law enforcement, so he was not eligible for a downward departure for substantial assistance.

In terms of his claim for assistance to federal law enforcement, the Court has already found that petitioner was not working under the direction of Agent Dillon with respect to any Latin King activities.  He cannot claim a substantial assistance departure based on his interactions with federal law enforcement. See supra, § IV.A.5.

As for his claim regarding local authorities, petitioner has not shown that he performed any acts that would qualify as "substantial assistance."  Petitioner claims that, in connection with a robbery involving jewelry, he:

> visited the West Haven Police Department[,] . . .
> reviewed photos of the jewelry in question[,] . . .
> identified the pieces he had in his possession, and
> promised to have them sent to him from Puerto Rico.
> Upon receipt of the items, Petitioner provided these
> to West Haven P.D.

Pet'r Mem. at 46-47.  Stripped to its core, petitioner claims that he returned jewelry that was believed to be stolen to the West Haven Police Department.  The government characterizes this conduct as nothing more than petitioner's civic duty.  The Court agrees.

Petitioner's conduct does not even rise to the level of the "assistance" that was deemed insufficient in <u>Korman</u>.  Petitioner only returned stolen property.  There should be nothing "extraordinary" about that.  If petitioner's attorney had requested a downward departure for substantial assistance, his request would have been denied.

This claim for ineffective assistance of counsel is **DENIED**.

8.    Failure to Inform the Court of Baez' Inability to Pay
      Assessed Fine

Finally, we come to Baez' eighth and final claim for

ineffective assistance of counsel:  that his counsel did not

inform the court that he was unable to pay the assessed fine.  He

asks that the court waive the fine.

a.    This claim is procedurally barred.

The government argues, and the Court agrees, that

petitioner's claim cannot be brought under § 2255 as it is

procedurally barred.  1st Govt Resp. at 21.  This claim does not

involve a constitutional error, nor an error of law constituting

a "fundamental defect which inherently results in a complete

miscarriage of justice."  Hardy, 878 F.2d at 97 (quoting

Addonizio, 442 U.S. at 185).  If petitioner is, in fact, arguing

for resentencing, his argument fails.

This case is directly on point with Graziano, 83 F.3d 587.

In Graziano, the defendant brought a § 2255 claim challenging,

inter alia, the imposition of a $250,000 fine.  Id. at 589.  He

claimed that the court imposed the fine without inquiring into

his ability to pay, that the fine was outside the sentencing

guidelines, and that the fine was outside the statutory maximum.

Id.  The Second Circuit affirmed the fine, holding that the fine

was within the statutory maximum for the offense involved, the

defendant had been informed of the statutory maximum and had

chosen to voluntarily plead guilty, and that any sentencing challenge was procedurally barred as he had failed to raise it on direct appeal.  Id. at 590.

Like the defendant in Graziano, Baez was informed as to the statutory maximum of the fine ($250,000), voluntarily chose to plead guilty, and failed to raise the challenge to the fine on direct appeal.  Thus, his claim is procedurally barred.

b.  Counsel was not ineffective

To the extent that petitioner is making the argument that his counsel was ineffective, his claim also fails because he cannot show that his attorney's performance was deficient.  The Court notes that at the time of sentencing, Baez had been taken into custody with approximately $16,000 in cash in his possession, which he had failed to disclose to his probation officer.  Sent. Tr. at 27, 44.  Given the facts and circumstances surrounding the case, it defies logic for petitioner to now suggest that his attorney was deficient in not standing up and objecting to a $20,000 fine, based upon petitioner's inability to pay.  Petitioner relinquished any credibility to make a claim regarding ability to pay when he lied to the probation officer.  The Court also notes that petitioner is a well-educated individual holding a PhD in psychology.  Sent. Tr. at 72, 74.  There is no evidence that a claim based on inability to pay would have succeeded.  See Graziano, 83 F.3d at 589 ("explicit findings

regarding a defendant's ability to pay a fine are not required . . . . [a]ll that is required is that the district court 'consider,' among other things, the defendant's ability to pay." (Internal quotation marks and citations omitted).

Petitioner's final attempt to claim ineffective assistance of counsel is **DENIED.**

In summary, petitioner failed to demonstrate that his attorney's performance was deficient or that any errors his attorney may have committed were reasonably likely to change the outcome of his proceedings.  All of Baez' claims for ineffective assistance of counsel are **DENIED.**

B.  <u>Indictment was "Constructively Amended"</u>

Petitioner argues that his indictment was constructively amended, such that he was convicted of an offense not charged in the indictment.  He argues that "the District Court is constrained by the indictment, hence restricted from consideration of offenses extraneous to the indictment proper. Since in the instant case the offense objected to by Petitioner was not a 'lesser included offense,' the District Court's consideration for sentencing was an amendment of the indictment." Mot. to amend 28 U.S.C. § 2255 mot. at 2, <u>Baez v. United States</u>, Nos. 97-CR-48 (AHN)and 02-CV-68 (AHN) (Mar. 6, 2002).  The Court is unpersuaded.

"A constructive amendment of an indictment 'occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them.'"   LaSpina, 299 F.3d at 181 (quoting United States v. Zingaro, 858 F.2d 94, 98 (2d Cir. 1998)).   To prevail on a claim for constructive amendment, a defendant must show that the amendment:

> so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.  In determining whether an 'essential element' of the offense has been modified, . . . we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial.

LaSpina, 299 F.3d at 181 (internal citations and quotation marks omitted).  Additionally, in the context of a conspiracy charge, the Second Circuit has held that "'the Government need not . . . set out with precision each and every act committed . . . in furtherance of the conspiracy,' particularly where the acts proven at trial were part of the 'core of the overall scheme and in furtherance of that scheme.'"   Id. at 182 (quoting Cohen, 518 F.2d at 733).

Here, Petitioner's claim merely rehashes his first ineffective assistance of counsel claim, that he was sentenced for offenses that were not charged in the indictment and to which

he did not admit.   See supra, § IV.A.1.   As has already been
discussed, petitioner admitted to the essential elements of the
conspiracy when he allocuted to two predicate acts.   Paragraph 10
of the indictment explicitly states "[m]embers of the Latin Kings
and their associates would and did conspire to commit, attempt to
commit, threaten to commit, commit and solicit the commission of
acts of violence, including murder, robbery, and assaults."   3rd
Indict.   Petitioner's admitted acts of conspiracy to commit
murder and assaults were clearly within the contemplation of the
grand jury, as indicated explicitly by paragraph 10 of the
indictment.

Petitioner's claim for constructive amendment is **DENIED.**

C.   Due Process Violation

Petitioner claims that he was deprived of due process
because the government allegedly misrepresented his interactions
with Agent Dillon and the West Haven Police Department,
prejudicing him at sentencing.   He also claims that the
government did not provide Baez with exculpatory evidence
regarding his contacts with the West Haven Police Department.
Both of these claims are without merit.

1.   Defendant was not denied due process

Petitioner has advanced nothing more than a conclusory
allegation that he was denied due process because the government

misrepresented his interactions with the West Haven police department.  This claim is patently frivolous.

The government stated in its brief that the West Haven police were pursuing him on charges of possession of stolen property.  2d Govt. Resp. at 11.  Petitioner states that he initiated the contact with the West Haven police department. Mot. to Amend § 2255 Mot., <u>Baez v. United States</u>, Nos. 97-CR-48 (AHN) and 02-CV-68 (AHN) (Oct. 18, 2002).  Whichever version is true is entirely irrelevant to both petitioner's conviction and his sentencing.  The West Haven Police Department incident did not form the basis for the RICO conspiracy, nor was it included in the sentencing calculation.  The West Haven Police Department incident would only have been relevant on a request for a downward departure for substantial assistance.  Petitioner did not make such a request.  Who initiated the contact was immaterial to the Court's sentencing.

        2.   <u>There was no Brady violation</u>

As part of his "due process" claim, petitioner also claims that the Government failed to disclose exculpatory information about the West Haven Police Department incident.  This claim is also frivolous.

Petitioner's only claim is that he initiated contact with the West Haven police to return jewelry that he received from a friend.  He alleges that the Government mischaracterized this

incident because it claimed that the police sought him in
connection with the stolen jewelry.  It is unclear what could
have been exculpatory from that fact pattern or what the
Government is claimed to would have withheld; it appears
petitioner is in fact claiming an affirmative misrepresentation
by the Government.

Petitioner fails to make a cogent argument demonstrating a
Brady violation.  Accordingly, this claim is **DENIED**.

D.   Request for a downward departure for aberrant behavior

In his Motion to Amend 28 U.S.C. § 2255 Motion and
Memorandum of Law dated January 31, 2002, petitioner asks the
Court to consider a downward departure pursuant to U.S.S.G. §
5K2.20, for Aberrant Behavior.  [Doc. # 1398].  However,
petitioner did not raise this claim on direct review, and he is
procedurally barred from raising it here on collateral review.
"Where a defendant has procedurally defaulted a claim by failing
to raise it on direct review, the claim may be raised in habeas
only if the defendant can first demonstrate either 'cause' and
actual 'prejudice'" or that he is 'actually innocent.'"  Bousley,
523 U.S. at 622 (citations omitted).  Baez makes no attempt to do
so here.  He has not demonstrated either 'cause' or 'actual
prejudice' nor does he assert that he is 'actually innocent.'
Id. at 623.  Baez' motion is **DENIED**.

E.   <u>Request for Collateral Review under Blakely and Booker</u>

Baez filed two motions arguing that his sentencing enhancements for his leadership role and for obstruction of justice were unconstitutional, in violation of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005).  Baez claims that, contrary to <u>Blakely</u>, both the leadership and obstruction of justice enhancements were imposed based upon judicial findings of fact rather than those found beyond reasonable doubt by a jury, yielding a sentence beyond the maximum.  He makes the same claim pursuant to the U.S. Supreme Court's decision in <u>Booker</u>.  The government argues that these cases do not apply retroactively on collateral review.  The Court agrees.

In <u>Guzman v. United States</u>, the Second Circuit held that <u>Booker</u> does not apply retroactively to "cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that <u>Booker</u> issued."  404 F.3d 139, 141 (2d Cir. 2005).  As for <u>Blakely</u>, neither the Supreme Court nor the Second Circuit has held that <u>Blakely</u> applies retroactively to cases on collateral review.  Specifically, the Second Circuit held that <u>Blakely</u> does not apply retroactively on collateral review to second or successive § 2255 petitions because it was not a new rule of constitutional law.  <u>Carmona v. United States</u>, 390 F.3d 200, 203 (2d Cir. 2004).

In this case, Baez' case became final on or about May 1, 2001, long before Blakely or Booker were decided.  Therefore, Baez' claims under Blakely and Booker must fail.

To the extent that Baez claims that his sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000), for allegedly enhancing his sentence beyond the statutory maximum based on facts not submitted to a jury and proved beyond a reasonable doubt, this claim is procedurally barred for failure to raise the claim on direct appeal.  Massaro, 538 U.S. at 504 (requiring petitioner to show "cause and prejudice" before procedurally defaulted claims will be heard on collateral appeal). Nevertheless, Baez cannot demonstrate that his sentence violates Apprendi because he cannot show that he was sentenced in excess of the statutory maximum.  The statutory maximum for a violation of 18 U.S.C. 1962(d) is twenty (20) years (or 240 months) incarceration, with a maximum fine of $250,000, supervised release of not more than three years, and a special assessment of $100.  Petitioner's sentence is for a 228 month period of incarceration, three years supervised release, a fine of $20,000, and a special assessment of $100.  This sentence is below the statutory maximum, so his Apprendi claim fails.

Baez' motions for collateral review under Blakely and Booker are **DENIED.**

IV.   CONCLUSION

For the foregoing reasons, Baez' § 2255 petitions are

**DENIED**.   The Court enumerates Baez' pending motions, along with

their disposition below:

| MOTION | DOCUMENT NUMBER | DISPOSITION |
|---|---|---|
| Motion to Vacate (2255) | 1390 | DENIED |
| Motion to Appoint Counsel | 1395 | DENIED AS MOOT |
| Motion for Discovery | 1423 | DENIED AS MOOT |
| Motion to Disqualify/Recuse Judge | 1428 | DENIED |
| Motion to Amend/Correct The Government filed a response, and the Court ruled, on the argument contained in this motion. | 1434 | GRANTED NUNC PRO TUNC |

Any objections to this recommended ruling must be filed with

the Clerk of the Court within ten (10) days of the receipt of

this order.   Failure to object within ten (10) days may preclude

appellate review.   See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and

6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the

Local Rules of the United States Magistrates; Small v. Secretary

of H.H.S., 892 F.2d 15 (2d Cir. 1989) (per curiam); F.D.I.C. v.

Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport, this 6th day of September 2006.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE